h STEWART, J.
Lottie M. McGuire (“McGuire”) filed suit against Bank One Louisiana (“Bank One”) for damages after Bank One paid a check drawn by McGuire and thereby created an overdraft in the amount of $188,-176.79. Bank One filed an exception of no cause of action which the trial court sustained. McGuire now appeals the dismissal of her suit for damages. We affirm.
FACTS
The allegations of fact set forth in McGuire’s petition state that on the morning of August 26, 1996, Timothy P. Looney (“Looney”), an acquaintance representing himself as an investment broker, approached her with an offer to sell $200,000 in bonds due to mature on October 31, 1996 for $206,400. McGuire told Looney that she would think about it and let him know. Later that day, McGuire informed Looney that she would buy the bonds for $200,000. Looney agreed to come by later to pick up McGuire’s check.
McGuire maintained both a checking account and an investment account with Bank One in Shreveport, Louisiana. Bank One’s trust department administered McGuire’s investment account. McGuire contacted Harvey Anne Leimbrook, an account officer in Bank One’s trust department, and instructed her to sell $200,000 worth of funds from the investment account and transfer the money to the checking account. Leimbrook informed McGuire that it would take two or three days for the money to be transferred.
Later that same day, Looney went to McGuire’s house, and McGuire presented him. with a check for $200,000 payable to his company, Paramount Financial Group. *715 The check was dated August 26, 1996. McGuire gave Looney “strict instructions” not to present the check for payment until Wednesday, August 28, 1996, so as to insure that the transfer of funds would be complete. Looney did 1¡¡not heed McGuire’s instructions, but instead he immediately deposited the check at Commercial National Bank (“CNB”).
CNB then presented McGuire’s check for payment to Bank One on August 27, 1998. Bank One, without notifying McGuire, honored the check even though the amount of money in McGuire’s checking account was “grossly insufficient” to cover the check. Bank One did mail an overdraft notice to McGuire the next day informing her that her checking account was overdrawn in the amount of $188,-198.79 and that an overdraft fee of $22 was charged to her account. McGuire received the overdraft notice on Friday, August 30, 1996.
Unfortunately, Looney did not purchase the bonds with McGuire’s money. Instead, Looney converted the money for his own benefit. Looney subsequently pled guilty to mail fraud and was sentenced to serve time in a federal penitentiary. McGuire alleges that if Bank One had informed her on August 26 or 27 that her check had been prematurely presented for payment contrary to her explicit instructions to Looney, then she would have become suspicious of Looney and stopped payment on the check'. McGuire seeks damages for Bank One’s negligence in failing to exercise ordinary care in paying the check and creating the overdraft.
In response to McGuire’s petition for damages, Bank One filed a peremptory exception of no cause of action. Bank One asserted that McGuire’s check was properly payable and that pursuant to La. R.S. 10:4-401, it was authorized to honor the check even though an overdraft resulted. The trial court granted Bank One’s exception upon finding that Bank One did nothing more than honor a properly payable check drawn by McGuire against her own checking account.
IgDISCUSSION
The peremptory exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Hailey v. Hickingbottom, 30,728 (La.App. 2nd Cir. 6/24/98), 715 So.2d 647; Webb Const., Inc. v. City of Shreveport, 30,491 (La.App. 2nd Cir. 5/13/98), 714 So.2d 119. The exception is limited to the face of the pleading and the well-pleaded facts in the petition must be accepted as true in concluding whether the law affords any remedy to the plaintiffs. La. C.C.P. art. 927; Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984); Stevens v. Wal-Mart Stores, Inc., 29,124 (La.App. 2nd Cir. 1/24/97), 688 So.2d 668. On appeal, our duty is to determine whether the facts alleged in the petition state any cause of action. Martin v. Bigner, 27,694 (La.App. 2nd Cir. 12/6/95), 665 So.2d 709; Hailey v. Hickingbottom, supra. When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, such amendment shall be allowed. If the grounds of the objection cannot be removed, the action shall be dismissed. La. C.C.P. art. 934.
According to the facts alleged in her petition, McGuire seeks damages from Bank One because a substantial overdraft resulted when Bank One honored a check drawn by McGuire on her own checking account. Bank One’s actions in this regard are governed by La. R.S. 10:4-401 (a) which states:
A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.
McGuire does not dispute that her check was properly payable. However, McGuire *716 argues that the bank’s authority to honor a check creating an overdraft is discretionary under R.S. 10:4-401(a) and that, as a matter of policy, this statutory right should be tempered by some standard of due care in compliance with the |4general usage and customs of the banking industry. As an alternative to reversal of the trial court, McGuire seeks leave to amend her petition to add additional pleadings regarding the duty of ordinary care owed by banks and the general banking customs and practices in this area.
McGuire cites Charles Ragusa & Son v. Community State Bank, 360 So.2d 231 (La.App. 1st Cir.1978) in support of her argument that Bank One owed and breached some duty of care in honoring her check. However, Ragusa involved a wholly different set of facts than those at issue in the present case. The plaintiff in Ragusa sought damages after the bank cashed a “stale check.” The payee lost the check and the plaintiff gave a verbal stop payment order. The plaintiff then issued a replacement check which the payee cashed and the bank paid. Three years later, the payee found the initial check and deposited it, after which the bank honored the check and charged it to the plaintiffs account, thereby creating overdrafts. The appellate court affirmed the trial court’s finding of liability on the part of the bank. The court found that R.S. 10:4-404, which authorizes a bank to charge payment of a “stale check” to a customer’s account when such payment is made in good faith, did not eliminate the requirement of ordinary care set forth in La. R.S. 10:4-103(1) which a bank must observe in all its dealings. The court determined that when a bank’s actions are at issue, it must show that it exercised requisite care with regard to its customer. The bank failed to introduce any such evidence to support its actions or show its good faith. Therefore, the court determined that payment of the obviously stale check demonstrated the bank’s lack of due care and prevented it from claiming the good faith defense set forth in R.S. 10:4-404,
The relevant distinction between Ragusa and the instant case is that R.S. 10:4-404, which governs a bank’s payment of a stale check, includes a good faith element whereas R.S. 10:4^401 does not. Ragusa stands for the proposition that a bank must prove its good faith in paying a stale check and charging it to a | scustomer’s account when a customer disputes such payment. The language of R.S. 10:4-401 permits a bank to charge a properly payable check against a customer’s account even though an overdraft results. No showing of good faith is required to justify the bank’s action. However, under the provisions of La. R.S. 10:4-103, a bank is required to exercise ordinary care. Bank One asserts that it exercised ordinary care in paying McGuire’s check and charging payment to her account. We agree. La. R.S. 10:4r-103(c) provides:
Action or non-action approved by this Chapter or pursuant to Federal Reserve regulations or operating circulars is the exercise of ordinary care and, in the absence of special instructions, actions or non-action consistent with clearinghouse rules and the like or with a general banking usage not disapproved by this Chapter, is prima facie the exercise of ordinary care.
Payment of a properly payable item creating an overdraft is an action approved by R.S.- 10:4-401(a). Therefore, such action by a bank is the exercise of ordinary care. See First Interstate Bank of Oregon v. Wilkerson, 128 Or.App. 328, 876 P.2d 326 (1994). General banking usage, customs, or practices would have no bearing on whether Bank One did or did not exercise ordinary care since its payment of McGuire’s check, even though an overdraft resulted, was expressly authorized by R.S. 10:4-401(a) and is per se the exercise of ordinary care , under R.S. 10:4-103(c). Therefore, we find, as did the trial court, that McGuire’s petition fails to state a cause of action against Bank One.
*717 We farther find that amendment of the petition to include allegations of general banking customs and practices is not warranted because such allegations would not remove the grounds of the objection stated in Bank One’s peremptory exception. Therefore, we will not remand this matter for McGuire to amend her petition to include additional pleadings regarding the general banking practices and customs. Our finding that Bank One’s actions constituted the exercise of ordinary care precludes amendment of the petition for the purpose of alleging that Bank | fiOne failed to exercise ordinary care when it honored McGuire’s check and charged it to her checking account.
In finding that McGuire’s petition fails to state a cause of action against Bank One, we have reviewed similar cases from other jurisdictions interpreting R.S. 10:4-401(a) and have found no support for McGuire’s position. In City Bank of Honolulu v. Tenn, 52 Haw. 51, 469 P.2d 816 (1970), the bank sued Tenn to collect $6,000 it paid out on an overdraft drawn by Tenn. Tenn had drawn the check as part of a business deal even though he knew that he did not have sufficient funds in his account, and he gave it to the payee with an express oral understanding that the payee would hold the check as evidence of his good faith. The payee, contrary to his understanding with Tenn, deposited the check.
The bank cashed the check after failing to reach Tenn by telephone. Thereafter, Tenn refused to reimburse the bank the amount of the overdraft. At issue was whether the bank had authority to cash Tenn’s check without his express authorization. The court found that the bank had such authority and reasoned that the authority was impliedly given when Tenn drew the check and delivered it to the payee. The court based its reasoning on cases holding that payment of the check creating an overdraft constitutes a loan for which the bank customer is liable for repayment. Also, the court noted that once a depositor initiates circulation of an instrument, the depositor “must in conscience and law bear the ultimate consequences thereof.” Tenn, supra and cases cited therein. Although McGuire argues that the decision in Tenn was reached because the bank exercised ordinary care by attempting to first contact Tenn before paying the check, we find no support for this interpretation in the case. The court makes no reference to the bank’s attempt to contact Tenn in holding that the bank had authority to pay the check.
|7In Pulaski State Bank v. Kalbe, 122 Wis.2d 663, 364 N.W.2d 162 (App.1985), review denied, 122 Wis.2d 783, 367 N.W.2d 223 (1985), Kalbe drew a check that was later lost or stolen. The bank received the check and paid it. Payment of the check resulted in an overdraft of $6,542.12. The bank sued to recover the overdraft amount. The court determined that pursuant to Section 404.401(1), Stats., the same provision as La. R.S. 10:4-401(a), the bank could properly pay the check even though it created an overdraft. The court reasoned that such payment is treated as a loan that may be recovered from the depositor. Kalbe argued, just as McGuire argues in the instant case, that a check creating an unusually large overdraft is not properly payable. The court rejected this argument and stated that the applicable statute “places no limit on the size of the overdraft or the bank’s reason for payment.” Pulaski, supra.
Just as in Tenn, supra, and Pulaski, supra, Bank One had authority to pay McGuire’s check even though it created an overdraft. The check was properly payable. The fact that a substantial overdraft resulted does not override the bank’s authority under R.S. 10:4-401(a). The allegations in McGuire’s petition indicate that she drew the check knowing that she had insufficient funds in her checking account to cover the check. It is unfortunate that McGuire was the victim of fraud. However, her loss is not one for which Bank One *718 can be found liable under the circumstances of this case.
CONCLUSION
For the reasons discussed, we affirm the trial court’s judgment granting Bank One’s exception of no cause of action. Costs of this appeal are assessed against McGuire.
AFFIRMED.