# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-50050

C. MICHAEL KAMPS,

United States Court of Appeals
Fifth Circuit

**FILED**

November 19, 2014

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

BAYLOR UNIVERSITY; KENNETH WINSTON STARR, In His Official
Capacity as President of Baylor University; ELIZABETH DAVIS, In Her
Official Capacity as Executive Vice President and Provost of Baylor
University; DAVID SWENSON, In His Official Capacity as Chair of the
Admissions Committee and Chair of the Scholarship Committee of Baylor
Law School; UNNAMED MEMBERS, Of the Law School's Admissions
Committee and of the Law School's Scholarship Committee,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:13-CV-929

Before STEWART, Chief Judge, and JONES and HIGGINSON, Circuit
Judges.

EDITH H. JONES, Circuit Judge:*

C. Michael Kamps, a law school applicant over the age of 50, sued Baylor

University and its administrators for violations of the Age Discrimination Act

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 14-50050

of 1975 ("ADA").  42 U.S.C. § 6101 *et seq*.  The district court referred the case to a magistrate judge, who recommended dismissing Kamps's claims.  The district court adopted the magistrate judge's report and recommendation.  Kamps appealed.  This court has considered his appeal in light of the briefs and pertinent portions of the record.  We find no reversible error of law or fact in the magistrate judge's well-reasoned report and recommendation.

## BACKGROUND

Kamps's age discrimination claim relies not on the fact that the law school rejected him, but that it did not admit him for his preferred terms.  Kamps wanted to matriculate in the Fall of 2010.  The law school wait-listed him for the fall, but offered him a seat in the Summer 2010 or Spring 2011 class.  Kamps declined.  The following year, Kamps applied for the Fall 2011 term.  Again, the law school wait-listed him, but offered him a seat in the Spring 2012 class.  Again, Kamps declined.  Kamps also complains that he did not receive the Nance Scholarship in 2011 because of his age, and that, in response to a formal complaint, the University retaliated against him when it rejected his Fall 2012 application.  Based on these acts, Kamps brought disparate treatment, disparate impact, and retaliation claims against the University and its administrators.

## STANDARD OF REVIEW

This court reviews *de novo* a district court's dismissal under Rule 12(b)(6), accepting as true all well-pleaded facts and viewing those facts most favorably to the plaintiff.[1]  *Warren v. Chesapeake Exploration, L.L.C.*, 759 F.3d

---

[1] On appeal, Kamps argues that the magistrate's report and recommendation erroneously accepted the defendants' allegations as true.  It plainly did not.  The report considered exhibits that Kamps himself attached to the complaint.  Those exhibits included a letter from David Swenson, Chair of Baylor Law School's Admissions Committee.  When a plaintiff attaches documents to the complaint, courts are not required to accept the plaintiff's interpretation of those documents.  If "an allegation is contradicted by the contents of an

413, 415 (5th Cir. 2014). "To survive a [ ] motion to dismiss, plaintiff[] must plead enough facts to state a claim for relief that is plausible on its face." *Id.* (internal citation omitted). When considering a motion to dismiss, this Court holds *pro se* litigants to a less stringent standard than those represented by counsel. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Nevertheless, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (internal citation and quotation marks omitted).

## DISCUSSION

The magistrate judge recommended dismissing Kamps's claims because: Kamps did not exhaust administrative remedies for the 2010 claims; Kamps did not state a plausible claim for intentional discrimination for the 2011 claims; and the ADA does not allow disparate impact or retaliation claims. In addition to the magistrate judge's report and recommendation, we restate a few additional points for emphasis.

### I.     Exhaustion of Remedies

Kamps has not exhausted administrative remedies for the 2010 admission and scholarship claims. Under the ADA "[n]o action . . . shall be brought . . . if administrative remedies have not been exhausted." 42 U.S.C. § 6104(e)(2). Interpreting comparable language in the Prison Litigation Reform Act, the Supreme Court has held that administrative exhaustion requires proper exhaustion, utilizing "all steps that the agency

---

exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (internal citation and quotation marks omitted). It makes no difference that a defendant authored the document; the court may consider it without violating the 12(b)(6) standard. Quite simply, Kamps cannot complain that the magistrate judge considered a document that *he* referenced in his complaint; that *he* attached as an exhibit; and that *he* contends supports his discrimination claim—even if a defendant authored it.

holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S. Ct. 2378, 2385 (2006) (emphasis in original) (internal citation and quotation marks omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* "Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The Department of Education ("DOE") requires all complaints to be filed "within 180 days from the date the complainant first had knowledge of the alleged discrimination." 34 C.F.R. § 110.31(a). The law school denied Kamps's 2010 application on February 17, 2010, but Kamps did not complain to the DOE until over a year later—on October 27, 2011. Because Kamps did not complain about the 2010 admission and scholarship decisions within the 180-day window, he did not exhaust administrative remedies as to those claims.

## II.     Intentional Discrimination

Kamps's 2011 admission claim fails for two reasons. [2] First, there are no facts in his complaint showing that Baylor used applicants' college grade point average ("GPA") to discriminate against older applicants generally or Kamps in particular. Kamps alleges that the defendants have known about grade inflation, and therefore, "knew, or should have known, the effect that grade inflation would have when comparing []GPAs earned in different eras." But knowing that GPA disadvantages older applicants does not mean Baylor used GPA *in order to* disadvantage older applicants. Second, Kamps was not

---

[2] Kamps seeks declaratory and injunctive relief, and monetary damages. The ADA, however, allows suit only for injunctive relief and attorneys' fees. *See* 42 U.S.C. § 6104(e)(1). To the extent Kamps seeks monetary damages and declaratory relief, those claims must be dismissed.

excluded from Baylor Law.  Baylor admitted him for the Spring 2012 term and he declined to attend.

Kamps's 2011 scholarship claim fails for similar reasons.  His complaint references no facts supporting his conclusion that the law school changed the Nance Scholarship's criteria to disadvantage him.  In fact, his complaint shows the opposite.  The law school's strategic planning committee changed the scholarship eligibility criteria in Spring 2009, long before Kamps applied.  The committee simply could not have changed the criteria to disadvantage Kamps.  Kamps has not alleged that the scholarship committee knew that he would subsequently apply, so his 2011 scholarship claim fails.

Overarching these claims is the fact that the law school's use of GPA falls within one of the ADA's exceptions to liability.  It is not a violation of the ADA to take an otherwise prohibited action if "the differentiation made by such action is based upon reasonable factors other than age." 42 U.S.C. § 6103(b)(1)(B).  A factor other than age is one that bears "a direct and substantial relationship to the normal operation of the program or activity . . . ." 34 C.F.R. § 110.13.  Use of GPA in post-secondary school admission decisions is a reasonable non-age-based factor.  Nearly every law school in the country uses GPA when evaluating candidates.  According to documents contained in Kamps's complaint, it is "one of the best quantitative predictors of academic success in law school."  And the use of GPA is directly related to the law school's normal operation.  Therefore, the use of GPA to evaluate potential students and scholarship recipients is a reasonable factor other than age and the school cannot be liable under the ADA.

### III.   Disparate Impact

The ADA does not prohibit policies that have a disparate impact.  When Congress wants to allow disparate impact claims, it uses particular language.  For example, Title VII of the Civil Rights Act states: "It shall be an unlawful

employment practice for an employer—to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or *otherwise adversely affect his status as an employee*, because of such individual's race . . . ."  Civil Rights Act of 1964, Title VII, § 703, 42 U.S.C. § 2000e-2(a)(2) (emphasis added).  The Supreme Court identified the "otherwise adversely affects" language as prohibiting policies that have a disparate impact.  *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 991, 108 S. Ct. 2777, 2787 (1988).  Similarly, the Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities *or otherwise adversely affect his status as an employee*, because of such individual's age[.]"  Age Discrimination in Employment Act of 1967 § 4, 29 U.S.C. § 623(a)(2) (emphasis added).  As with Title VII, the Court held that this "otherwise adversely affects" language prohibits polices that have a disparate impact.  *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233-40, 125 S. Ct. 1536, 1540-45 (2005).

The ADA lacks any such language.  The ADA states "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."  42 U.S.C. § 6102.  Unlike Title VII and the ADEA, nowhere does the ADA use "otherwise adversely affects" language.  Moreover, the ADA's prohibition is almost identical to Title VI of the Civil Rights Act, which prohibits only intentional discrimination.  *See* Civil Rights Act of 1964, Title VI, §601, 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.");

No. 14-50050

*Alexander v. Sandoval*, 532 U.S. 275, 280, 121 S. Ct. 1511, 1516 (2001) (holding that Title VI "prohibits only intentional discrimination").

Further, although the DOE's regulations purport to prohibit policies that have a disparate impact, no implied private cause of action exists to enforce them. "[A] private plaintiff cannot enforce a regulation . . . if the regulation imposes an obligation or prohibition that is not imposed [ ] by the controlling statute." *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 906 (6th Cir. 2004) (citing *Sandoval*, 532 U.S. at 284-85); *see also Lonberg v. City of Riverside*, 571 F.3d 846, 852 (9th Cir. 2009) (holding that "under *Sandoval*, [the regulation] is not enforceable" through a private cause of action because the "obligations it imposes are nowhere" to be found in the statute). Therefore, "if a statutory provision prohibits only intentional discrimination . . . regulations adopted to effectuate the provision may be enforceable through its private cause of action only to the extent that they, too, prohibit intentional discrimination." *Ability Ctr. of Greater Toledo*, 385 F.3d at 906.

## IV.  Retaliation

Kamps's retaliation claim fails for the same reason as his disparate impact claim. Under *Sandoval*, a regulation provides a private cause of action only if it effectuates an express statutory provision. *Id.* The ADA prohibits only intentional discrimination. *See* 42 U.S.C. § 6102. Because the regulations—not the statute—prohibit retaliation, Kamps has no cause of action for retaliation. *See id.*; 34 C.F.R. § 110.34. Kamps's retaliation claim was correctly dismissed.

## V.  Dismissal with Prejudice

Kamps argues last that dismissal with prejudice was unwarranted. Ordinarily, a court "should not dismiss the complaint except after affording every opportunity (for) the plaintiff to state a claim upon which relief (can) be granted." *Hitt v. City of Pasadena*, 561 F.2d 606, 607 (5th Cir. 1977) (internal

citation and quotation marks omitted). But here amendment would be futile. Most of Kamps's claims are barred because he did not exhaust administrative remedies or because the statute does not allow disparate impact and retaliation claims. Regarding his claims of intentional discrimination, his allegations are wholly conclusional; in the case of Baylor's use of GPA, plainly non-age-related; and are trumped by the fact that he was offered admission on several occasions. These allegations plainly fail under *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (holding a complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."), and *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . .").

## CONCLUSION

For these reasons, we **AFFIRM** the district court's dismissal of Kamps's complaint with prejudice.